UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YANTAO J.,

               Petitioner,

     v.

WARDEN OF THE GOLDEN STATE ANNEX, et al.,

               Respondents.

No. 1:26-cv-00021-TLN-SCR

**ORDER**

This matter is before the Court on Petitioner Yantao J.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On January 6, 2026, the Court ordered Respondents to file a response to Petitioner's request for injunctive relief. (ECF No. 3.) On January 15, 2026, Respondents filed an opposition to Petitioner's Petition for Writ of Habeas Corpus. (ECF No. 7.) For the reasons set forth below, Petitioner's petition is GRANTED.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native of China who entered the United States in August 2023 without being admitted or paroled after inspection by an immigration officer. (ECF No. 7-1 at 9.) Following apprehension, Petitioner was given a Notice to Appear and released on his own recognizance. (*Id.* at 7–9.) On September 26, 2025, Petitioner was re-detained. (*Id.* at 1–5.)

///

1

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims he is being unlawfully subjected to mandatory detention without a hearing in violation of his due process rights. In response, Respondents argue Petitioner's detention is lawful as he is being detained pursuant to the mandatory detention statute, 8 U.S.C. § 1225(b)(2) ("§1225(b)(2)"), and *Matter of Yajure Hurtado*.[1] The Court will address each of these arguments in turn.

### A.    Statutory Claim

The Court begins with the central dispute in this case: whether § 1225(b)(2) or 8 U.S.C. § 1226(a) ("§ 1226(a)") governs Petitioner's immigration detention. The issue turns on whether Petitioner is an applicant "seeking admission." Section 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. Section 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

---

[1]    *Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025) (stripping Immigration Judges of authority to consider bond requests for any person who entered the United States without admission pursuant to a recent DHS policy mandating detention for those persons).

1196 (9th Cir. 2022).  Under § 1226(a), the Government has broad discretion whether to release or detain the individual.  *Id.*  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by an immigration authorities and subject to removal.  *See id.* at 1196.

Courts nationwide, including this one, have overwhelmingly rejected Respondents' arguments and found DHS's new policy unlawful. *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§] 1225 and 1226; (3) would render a recent amendment to [§] 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court agrees with the well-reasoned and compelling decisions and finds no reason to reconsider its prior rulings.

For these reasons, the Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(2).  Petitioner is subject to § 1226(a) and therefore he is entitled to the statutorily permitted process including a bond hearing at minimum.  However, Petitioner has not been afforded a bond hearing, and Respondents maintain that Petitioner is not eligible for one.  Thus, the Court finds Respondents improperly subjected Petitioner to mandatory detention without a hearing.

### B.    Due Process Claim

Petitioner also argues that his continued indefinite civil detention without a hearing infringes upon his liberty in violation of due process.  (ECF No. 1 at 16.)  Respondents argue that Petitioner is detained under § 1225(b)(2), which mandates detention.  (ECF No. 7 at 2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.    Liberty Interest

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or

4

over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

The Court finds Petitioner has a substantial liberty interest based on his release from immigration custody. *Salcedo Aceros*, 2025 WL 2637503, at *6 ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

*ii.        Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at 1206.

As to the first *Mathews* factor — Petitioner's private interest — as discussed above, Petitioner has been out of custody.  (ECF No. 1 at 2.)  The length of time Petitioner has been in the United States, as well as his established relationships, create a powerful interest for Petitioner in his continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here be considerable.  The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so where, as here, an immigration judge has already determined that Petitioner is neither dangerous nor a flight risk.  (ECF No. 6 at 4); *see R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil immigration detention, which is 'nonpunitive in

5

purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Custody hearings in immigration court are "routine and impose a 'minimal' cost." "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994.

Having found that Respondents violated Petitioner's statutory and constitutional rights, the Court GRANTS Petitioner's petition. (ECF No. 1.)

**IV.    CONCLUSION**

IT IS HEREBY ORDERED:

1.    Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2.    Respondents must IMMEDIATELY RELEASE Petitioner Yantao J. from custody. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified. Respondents must file a notice certifying compliance with this provision of the Court's Order by January 17, 2026; and

3.    The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: January 15, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

6